COLUMBUS, NEWARK & ZANESVILLE ELEC. RY. ET AL. V. JOHN NELSON ET AL.

1. FEE TO LAND USED FOR CANAL RESERVOIR BECOMES APPROPRIATED BY STATE'S OCCUPATION, REGARDLESS OF OWNER'S FAILURE TO OBTAIN COMPENSATION.

> A reservoir used as a feeder for an Ohio canal became a part of the canal system of the state, and the occupation of the land by the state for such a purpose amounted to an appropriation of the land, the fee simple title passing to the state regardless of failure on the part of the owner to make application for compensation therefor.

2. LAND DOES NOT REVERT BY ABANDONMENT OF CANAL.

> The abandonment of a canal does not cause the title to the land belonging thereto to revert to the original owners, their heirs or devisees, but the title remains in the state until granted out by proper conveyance.

3. BANKS OF CANAL BELONG TO STATE, ABUTTER'S USE IS BY SUFFERANCE ONLY.

> The banks of a canal, and of its feeders and reservoirs, constituted a necessary part of the canal, and in the absence of an agreement to the contrary formed a part of the original appropriation by the state; and the continued use of this land to the water's edge by the abutting owners was not a matter of right, but of sufferance on the part of the state.

4. EXTENT OF LAND BANKS OF CANAL RESERVOIR COMPRISE STORAGE LEVEL AND RIGHT OF WAY AROUND.

> The appropriation of land for the banks of a canal reservoir included a space of a sufficient width to hold the waters up to the storage level and protect surrounding property and afford the agents of the state a right of way over and around the property for purposes of maintenance.

5. STATE BOARD OF PUBLIC WORKS CANNOT LEASE, FOR BUILDING PURPOSES, BANK OF CANAL RESERVOIR DEVOTED TO PUBLIC PARK PURPOSES.

> The general assembly having set apart the Licking reservoir as a public park and pleasure resort for the people of the state generally, the state board of public works is without authority to grant a lease of its banks for building purposes that will interfere with the free and uninterrupted use thereof by the people and the agents of the state.

[Syllabus by the court.]

Licking County.

ERROR to common pleas court.

*Fitzgibbon & Montgomery, W. R. Pomerene* and *Durban & King,* for plaintiffs in error.
*Flory & Flory,* for defendants in error.

## PER CURIAM.

The Columbus, Newark & Zanesville Electric Railway Company and the Ohio Electric Railway Company filed their joint petition in the common pleas court of this county against John Nelson and Lena Nelson and asked that said defendants be enjoined from bringing building material upon certain real estate described in the petition and from digging up, cutting or destroying the ground or soil thereof, and from erecting thereon buildings, constructions or frameworks of any kind, and averring that the plaintiffs are the owners of said ground upon which the defendants purpose to erect such buildings and structures, said land having been conveyed to said plaintiffs by Lindsay Bounds and others, and that it constitutes a part of what is now commonly known as Buckeye Lake Park.

To this petition Lena Nelson filed an answer and cross petition admitting that the plaintiff, the Columbus, Newark & Zanesville Electric Railway Co., is a corporation and owns certain real estate known as Buckeye Lake Park, located in Buckeye Lake, admitting that the Ohio Electric Railway Company is a corporation, and denying all the other averments of the petition, and particularly that the plaintiffs or either of them have any interest in or to the land described in the petition upon which she was conducting building operations, and averring the deed from Lindsay Bounds and others did not convey said lands to said plaintiff, but on the contrary expressly and definitely excepted the same therefrom in the following language, to wit, "Excepting from the above real estate any right, title or interest that the said state of Ohio may have acquired in or to the second parcel herein by reason of the location of the Licking reservoir thereon; excepting also from said covenants whatever right or title the state of Ohio has in the first parcel above said water line herein mentioned for retaining banks of the waters of said reservoir"; and further averring

Railway v. Nelson.

that she is the owner by lease from the state of Ohio of the premises in dispute so excepted from the operations of said deed. And for cross petition the said defendant avers that Buckeye lake, formerly known as the Licking reservoir, constitutes a part of the canal system of the state and that said body of water and lands covered by said waters and the lands adjacent thereto, are all owned by the state of Ohio and under the management of the state board of public works. That by recent legislation said Buckeye lake and lands adjacent thereto have been dedicated to the public as public parks for pleasure resort, fishing, boating and other recreations, and that the said board of public works has executed a lease to this defendant for the property so owned by it, and that it is upon this land and not other land that she had started the construction of the same and had largely accomplished said construction when the plaintiffs with a large force of workmen by force and violence entered upon these premises, tore up the platform of the pier, pulling up the tiling and stakes which constitutes the lower part and support of the pier, destroying the lumber out of which it was constructed and carried the same away and converted it to their own use, and tore the cottage and boat house from their foundations and moved the same from the land of this defendant to lands owned by the plaintiffs. And that the plaintiffs threaten and will unless restrained by the court again enter upon the lands of this defendant and destroy any buildings or piers she may erect thereon, and thereby deprive her of the use and profits of the same to her irreparable injury, for which she has no adequate remedy at law, and prays for a perpetual injunction and for a decree quieting her title in said premises.

To this cross petition the plaintiff filed an answer averring the ownership of these premises in plaintiffs and denying that defendants have any right, title or interest thereto. The cause was heard upon evidence in the court of common pleas and now comes to this court upon appeal, and has been submitted upon the transcript of the evidence taken in the com-

Licking County.

mon pleas court with all the exhibits and such additional evidence as parties desired to offer.

It appears from the evidence that the state of Ohio commenced about the year 1828 and completed about 1832 the Licking reservoir as a feeder to the canal system under the authority of an act of the general assembly of Ohio, passed April 4, 1825.  By the provisions of Sec. 8 of that act, it appears that the state might lawfully enter upon and take possession of and use all and singular any lands or water, streams or materials necessary for its canal system, for the purpose of making any and all such canals, feeders, locks, dams, etc., and that where such property taken should not be given or granted to the state that it should be the duty of the canal commissioners on application by the owners of said lands, waters, streams and materials to appoint a board of appraisers to make a just and equitable appraisal of the loss and damages to such private owners, and it was made the duty of said appraisers to enter an apt and sufficient description of the premises appropriated for the purposes aforesaid in a book to be provided for that purpose.  It further provided that the fee simple of said premises should pass to and be vested in the state.

In the case of *State* v. *Railway*, 53 Ohio St. 189 [41 N. E. Rep. 205], it is held that by force and provisions of Sec. 8, above referred to, that wherever the state actually occupied a parcel of land for canal purposes, a fee simple title thereto at once and by virtue alone of such occupancy, vested in the state. It is said, however, by counsel for the plaintiff, that this reservoir is not a canal, and therefore it is not within the provision of this legislation, but Sec. 8 not only provides for canals, but for feeders, dikes, locks, dams and such other works and devices as the canal commissioners may think proper.  So that this reservoir being used as a feeder of the canal becomes a part of the canal system of Ohio, and the occupation of said land by the state of Ohio for such purposes is an appropriation of the land, and the fee simple passed to the state with the right only in the original owner to make application for damages and compensation therefor, and his failure to make such application for damages and compensation would in no

wise affect the title of the state thereto. It is suggested, however, that before such title could pass to the state that there must be an apt and sufficient description of the premises, but the statute does not so provide. The statute provides that the canal commissioners and each of them or any superintendent, agent or engineer employed by them might enter upon and take possession of lands, waters, streams and materials necessary for canal purposes and does not seem to provide that a description thereof shall be given, and nothing further is required beyond the actual occupation of the same, but where damages and compensation have been demanded and the board of appraisers have considered such claims then it becomes the duty of such board of appraisers to make an apt and sufficient description of the premises in a book to be provided for that purpose.

So that unless the owners of this property actually apply to the state for compensation and damages there would not be any description of the land as a matter of necessity, but only such description as the canal commission might have for its own use and convenience. The appropriation consists in the taking possession of the land and the mere fact of taking possession for the purpose mentioned in the statutes passed the fee simple title to the state, and a later abandonment of the canals would not revest the title in the original owner or divest the state of its title thereto. The fee simple having once lodged in the state remains there until it be granted out of the state by proper conveyance.

Another contention is that actual occupancy and actual taking is required in order to vest the title in the state, and therefore the adjacent banks which confine the waters in the canal were not actually or physically in possession of the state, and the title did not pass to the state and it can claim no more than the lands actually covered by the waters.

In the case of *Hatch* v. *Railway*, 18 Ohio St. 92, the Supreme Court of Ohio held in the case of a private canal company that an appropriation of land by a canal company for the purpose of a canal in the absence of any contract or statute to the contrary will be presumed to have included land

Licking County.

for a berme bank as well as a tow path and the exclusive power of the company over the land necessary for such bank is the same whether it consists of a natural or artificial deposit of earth. It would seem to us that the power to appropriate land upon which to store water without carrying with it the right to the retaining banks would be a useless grant of power. In the case of *Hatch* v. *Railway, supra,* the Supreme Court, page 125, says:

"A berme bank for the canal was necessary for the uses of a canal; and whether it consisted of a natural or artificial deposit of earth can make no difference. It must have formed a part of the original appropriation by the canal, unless there were a special agreement to the contrary. * * * The plaintiff had full opportunity to show a special agreement to the contrary, if such existed; and if, during the existence of the canal, without such contract, he had the use of the land up to the water's edge, it was as a matter of sufferance and not of right."

In the case of *Carpenter* v. *State,* 12 Ohio St. 457, it is held that no record or writing is necessary to show the appropriation of such berme bank by the state; on the contrary, it is presumed in the appropriation of land for canal purpose. It is claimed that this is not a canal proper, but only a reservoir, and was not intended at the time of the appropriation to be used for navigation but for supply water only. The statute, however, included feeders as well as the canal proper; and feeders or reservoirs equally require retaining banks—otherwise the appropriation is useless.

We are of the opinion that this appropriation by the state only the land actually covered by these waters but also a berme bank of sufficient width not only for the purpose of retaining the waters but for such other legitimate purposes for which it may be used, including not only the duty to protect adjacent land owners, but also to protect the reservoir from invasion from adjoining proprietors from any natural cause that might affect the same, and also for the purpose of affording a right of way to the agent of the state over and around this property for the purpose of proper maintenance thereof.

We are of the opinion that this appropriation by the state of lands for reservoirs or feeders for the canals included berme banks, and that they would necessarily be included in ascertaining the compensation and damages that might be allowed therefor.

It is hard for this court to determine from the evidence before it what the actual width of this berme bank is. The survey the state made under the provisions of R. S. 218-223 is of no value whatever. The state at this time can not arbitrarily determine how much land was originally appropriated. If the surveys had been made at the time of the appropriation, then the landowners could have obtained compensation and damages therefor and such surveys might control, but at this time the court must determine as best it can from the evidence, considering the nature and extent of the improvement and requirements of the state, the minimum amount of land that would necessarily be included in the appropriation for berme bank purposes. It does appear from the evidence that the original provision for berme bank for canal purposes was never less than 12.12 feet, and it would seem reasonable to conclude that this minimum must have been recognized then as the amount necessarily included for this purpose, and in view of the purpose to be served that amount is not excessive. This reservoir was built for the storing of large quantities of water, and wherever it was necessary to construct an artificial berme bank the state did construct such a bank of this or greater width, and this alone ought to have been sufficient notice to the landowners that the state was claiming that a bank of this width was necessary for its purpose. Undoubtedly the owner could have recovered compensation and damage for that extent of bank in addition to the land actually covered by the water, if such application had been made to the board of appraisers.

It is further insisted that this appropriation was made by the state at the time the United States owned the land and therefore could not be operative as against sovereignty, but when the United States conveyed by patent deed to the original predecessor in title to the plaintiff such predecessor in

Licking County.

title then had the right to make his application for compensation and damages, for at least the right of the state to appropriate would then obtain, and the state at that time was in possession of this property and has ever since remained in possession; the fact that he may have used or pastured this land to the water's edge is not important; as said in the case of *Hatch* v. *Railway, supra,* if he did so do it was by mere sufferance and not of right.

Another question of considerable importance is the question as to the extent or line of appropriation. It is insisted on the one hand that, if there was an appropriation at all, that appropriation can not extend beyond the low water line and that if any berme bank is to be added to that, the measurement therefor must be from that line. It is contended on the other hand that the measurement of this bank should commence at the flood water line. We can not agree with either of these contentions. This reservoir was built for a feeder to the canals, a place in which to store water in wet seasons to maintain the level of the canals in dry seasons. That being true, the reservoir would be useless if it could only be maintained to a low water line. Undoubtedly in season of continued drought, water would be drawn from this reservoir to the level of the water in the canal and if that were all the land that the state acquired, then it would be useless as a storage reservoir. On the other hand, when by heavy floods it is filled beyond the capacity of the reservoir and above the level of the waste weir so that these flood waters would waste until the level of its storage capacity is reached, the state could have no need or interest in such flood water only to the extent which the state had prepared to hold and retain the same for the use of the canals. Therefore it is the storage level that must obtain.

We have reached the conclusion first, that the state has the title in fee simple to not only the land covered by these waters, but also to a berme bank around the same to the width of 12.12 feet; that this measurement of this berme bank commences at the water line at a stage of water to the limit of the storage capacity of the reservoir. The exact location of this

Railway v. Nelson.

level is one of the most difficult questions presented in this case. There seems to be no record of that level, and it may be said here that it is not important as to the level that is maintained at this time; it is the level which was originally established that marks and defines the appropriation by the state by which title in fee passed to the state, for the title being once vested it becomes absolute, and even the abandonment of the canal system or of this reservoir would not affect it.

The data, however, from which the engineer of the board of public works has attempted to establish this level is fairly satisfactory. It seems to us that in the absence of evidence to the contrary, that must be accepted as the best evidence of which the case is now susceptible. This evidence was given in the common pleas court many months ago, affording the plaintiff sufficient opportunity to further investigate and determine its reliability and if possible furnish better data to establish the storage level.

It is insisted that the evidence is too uncertain and unreliable to be adopted by the court in determining this controversy, but in view of the purpose for which this reservoir was built and the needs it was designed to serve, it seems to us that the result reached by the engineer is at least reasonable, and for lack of testimony in conflict therewith we were compelled to accept the same for the purpose of this case. It would further appear that the purpose for which the berme bank was acquired by the state originally as well as its present needs not only for the board of public works, their agents and employes, and in view of the rights of the public therein under the act of legislature establishing this as a public park and pleasure resort for all the people of the state, that the board of public works has no authority whatever to grant a lease of this berme bank for building purposes or for the purpose of placing any obstruction thereon that would interfere with the free and uninterrupted use thereof either by the people or by the state and its agents.

Having reached the foregoing conclusion, it follows that the petition of the plaintiff must be dismissed with costs of this suit, that the prayer of the defendant's cross petition must

`Licking County.

be granted as to all that portion of the property leased by her
from the state not included in the limits of the berme bank,
but as to that portion she is enjoined from constructing any
building or other structures thereon that would in any wise
interfere with the free and uninterrupted use of the same.

---

## BASIS OF ADDITIONAL COMPENSATION TO COMMON PLEAS JUDGES.